**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON AT TACOMA**

**CASE NO. 3:26-cv-05163 TMC**

**Amaruel Knowledge,**

Plaintiff(s).

v.

**ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,**

**ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY**

Defendant(s).

**PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES**

**Plaintiff Amaruel Knowledge, appearing *pro se*, files this First Amended Complaint** against Defendants Allstate Vehicle and Property Insurance Company and Allstate Fire and Casualty Insurance Company, alleging as follows:

## I. PARTIES

1. Plaintiff Amaruel Knowledge is an individual residing in the City of Tacoma, Pierce County, Washington, at 716 South Proctor.

2. Defendant Allstate Fire and Casualty Insurance Company is a foreign insurance corporation authorized to transact insurance business in the State of Washington, and insured Plaintiff's automotive and related assets at all relevant times.
3. Defendant Allstate Vehicle and Property Insurance Company is a foreign insurance corporation authorized to transact property and homeowner insurance business in the State of Washington, and insured Plaintiff's residential property and household interests at all relevant times.

## II. JURISDICTION AND VENUE

1. This Court has original subject-matter jurisdiction over this action under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the Plaintiff and the Defendants, and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.
2. Venue is proper in the United States District Court for the Western District of Washington under 28 U.S.C. § 1391(b) because a substantial part of the events, omissions, and toxic exposures giving rise to the claims occurred entirely within this judicial district in Tacoma, Pierce County, Washington.

## III. FACTUAL BACKGROUND

1. On or about March 12, 2024, Plaintiff’s 2002 Chevrolet Tahoe LS was stolen and later recovered with significant structural damage, missing contents, and a severe chemical and drug-odor biohazard profile, which was subsequently marked as a "BIO" hazard asset by the carrier's agents.

2. **The Corporate Shell Game & Interconnected Operations:** Defendants operate a coordinated corporate shell game to systematically evade liability. As confirmed directly by Allstate representative Erin Lee, both corporate entities are interconnected parts of the same operational mechanism. While attempting to split this claim into separate auto and homeowner categories to dodge accountability out of court, Allstate Vehicle and Property Insurance Company and Allstate Fire and Casualty Insurance Company operate hand-in-hand out of identical corporate infrastructure, utilizing a shared electronic network pipeline (`allstateinsurancecompany@mg.copart.com`) to freeze the valuation of the automotive claim while simultaneously dumping the toxic biohazard asset onto Plaintiff's residential land for free.

3. Plaintiff promptly reported the loss to Allstate and fully complied with all requests for information, inspections, and documentation.

4. From March 2024 through the present, Defendants deliberately and maliciously mishandled the claim through their agents—including Alicia Matthews, Kristen Smith, Latosha Williams, John Nunnery, and Erin Lee—by:

- a. Issuing contradictory statements regarding coverage for aftermarket rims and tires;
- b. Fabricating and "guesstimating" mileage inputs despite Plaintiff's explicit disclosures that the Tahoe had been securely stored and not driven for roughly two years;
- c. Producing an initial low total loss figure of approximately $1,800 without valid market comparables, and later altering numbers arbitrarily to $3,994.92 without any consistent, transparent, or legal basis;
- d. Refusing to properly reimburse custom aftermarket rims and tires despite Plaintiff's rapid provision of receipts and prior explicit assurances from adjusters Aleta Mathews and Latoshia Williams that recent purchases (within 6 months) would be fully reimbursed;
- e. Ignoring repeated written and oral requests to escalate the file to a senior manager or team lead (with John Nunnery explicitly telling Plaintiff, *"You'll never speak to my lead"*), and intentionally routing communications back to the exact adjusters being accused of bad faith;
- f. Actively placing and abandoning the highly toxic, marked biohazard vehicle directly on Plaintiff's residential property for over 18 months—forcing it to sit exactly one step from Plaintiff's dining room and living room windows, eight steps from the bedrooms, and nine steps from where neighborhood children play;

- g. **Proximity and Neighborhood Impact:** The vehicle was abandoned in extreme close proximity not only to Plaintiff's home, but directly adjacent to neighboring residential property lines. This forced toxic chemical off-gassing, foul odors, and environmental hazards onto both Plaintiff and the surrounding neighborhood, severely impacting habitability, residential business operations, and peaceful enjoyment, while manipulative adjuster tactics forced Plaintiff to enter the vehicle multiple times to photograph and retrieve items to his physical detriment;

- h. Purposely delaying for months any clear answer on whether stolen contents were covered under the auto channel or required a homeowners claim, using this internal confusion to trap an asset stalemate on Plaintiff's private driveway.

5. After Plaintiff sent two separate demand letters to Allstate's legal department—the latter around August 2025 (~$15,000)—employee John Nunnery intercepted the formal corporate mail and called Plaintiff the next day, stating Allstate would have Copart pick up the vehicle at no expense to Plaintiff.

6. During that call, Nunnery stated a check for $3,994.92 would be issued. Plaintiff explicitly rejected that amount on the phone, stating: *"If you send the check, I will send it right back.*

7. Despite Plaintiff's explicit non-acceptance, Defendants bypassed his rejection and arranged/orchestrated the physical removal of the vehicle from Plaintiff's property through their shared Copart network.

8. Approximately two to three weeks after removal, Defendants abruptly reversed their legal position, altered definitions, and asserted the claim was under an "owner retain" status, informing Plaintiff he must now pay Copart directly out of pocket for storage fees and to retrieve or return the vehicle.

9. Copart later contacted Plaintiff demanding vehicle disposition; when Plaintiff attempted to explain the ongoing insurance dispute, Copart staff abruptly instructed him to *"take it up with your insurance carrier."* The vehicle remains hijacked within Copart's possession.

10. At no time did Plaintiff agree to accept Allstate's $3,994.92 "undisputed" payment, nor did Plaintiff authorize any inference that vehicle pickup constituted a settlement of claims.

11. **Context of Personal Property:** Several high-value items inside the vehicle were associated with Plaintiff's nephew, a professional basketball player competing overseas, who had recently returned home to stay with Plaintiff and utilized the vehicle, explaining the presence and value of several items later reported stolen.

12. **The Environmental Threat:** The unmitigated chemical asset was left exposed to record-breaking regional rainfall, causing toxic leachate runoff to drain directly into municipal storm systems, necessitating formal violation reports with the City of Tacoma Environmental Services, the Washington State Department of Ecology, and the EPA for immediate soil and water testing.

## IV. CAUSES OF ACTION

### COUNT I – BREACH OF CONTRACT

1. Plaintiff incorporates all prior paragraphs by reference.

2. Plaintiff's Allstate policies covered the theft, loss, property damage, and associated benefits of the vehicle and residential property.

3. Defendants breached these contracts by unreasonably undervaluing the loss, mishandling valuation inputs, refusing full reimbursement of rims/tires despite explicit agent representations, failing to timely address stolen-property coverage channels, and using separate corporate names to block payment of benefits due.

**COUNT II – INSURANCE BAD FAITH (RCW 48.30.015)**

1. Plaintiff incorporates all prior paragraphs by reference.

2. Defendants unreasonably denied and delayed benefits, contradicted their own agents' assurances, refused fair managerial escalation, used out-of-court procedural tricks to hide internal metadata, and intentionally mishandled the total-loss removal/return sequence to trap Plaintiff.

3. Such conduct constitutes bad faith under the Insurance Fair Conduct Act (IFCA), RCW 48.30.015.

**COUNT III – WASHINGTON CONSUMER PROTECTION ACT (RCW 19.86)**

1. Plaintiff incorporates all prior paragraphs by reference.

2. Defendants engaged in unfair and deceptive acts or practices in trade or commerce by misrepresenting coverage, manipulating valuation methodologies, stonewalling escalation, and utilizing a joint email infrastructure (allstateinsurancecompany@mg.copart.com) to run an unconscionable corporate shell game.

3. These acts are capable of repetition, affect the public interest, and have directly caused severe injury to Plaintiff's property, business finances, and physical well-being, entitling him to relief under RCW 19.86.090.

**COUNT IV – NEGLIGENCE**

1. Plaintiff incorporates all prior paragraphs by reference.
2. Defendants negligently handled the administration of this claim by fabricating mileage assumptions, enforcing valuation errors, and allowing an industrial biohazard asset to sit open and off-gassing in close proximity to residential homes for an extended period, causing foreseeable and unforeseeable harm.

**COUNT V – MISREPRESENTATION**

1. Plaintiff incorporates all prior paragraphs by reference.

2. Defendants' agents (including Aleta Mathews, Latoshia Williams, and Erin Lee) falsely represented that recently purchased rims and tires would be reimbursed upon receipt, and John Nunnery misrepresented pickup logistics to fraudulently induce vehicle removal while concurrently pressing a minimalist settlement, upon which Plaintiff relied to his detriment.

## V. DAMAGES, THE EGGSHELL SKULL DOCTRINE & SPECIAL ECONOMIC LOSSES

1. Plaintiff incorporates all prior paragraphs by reference.
2. **The Eggshell Skull Doctrine & Aggravation of Health Issues:** To be explicitly clear, Plaintiff does not contend that Allstate originally created or caused his underlying dental or bodily health conditions; rather, Plaintiff contends that Allstate's 18-month delay, bad faith mishandling, and active abandonment of a toxic biohazard vehicle directly **exacerbated, accelerated, and severely aggravated** these medical issues (including structural bone loss and dental/oral health impacts documented via DICOM scans and medical providers). Under the Eggshell Skull Doctrine, Defendants take Plaintiff as they find him and are fully liable for the exponential worsening and accelerated physical toll triggered by trapping Plaintiff inside a toxic environment.

3. Because the vehicle sat directly outside Plaintiff's living windows and property boundaries, the vast long-term medical implications and future health problems stemming from breathing unmitigated chemical vapors require lifetime medical monitoring damages.

4. **Special Economic Losses, Travel, & Professional Wage Impacts:** As a direct result of the physical injuries and aggravated medical issues triggered by Defendants' conduct, Plaintiff suffered extensive out-of-pocket financial losses, travel expenses, and severe business disruption:

    - **Special Medical Travel Expenses:** Incurred direct out-of-pocket travel and treatment costs for specialized care, including international dental travel (such as trips to Sani Dental and Meza Dental totaling approximately $3,500 combined for travel, logistics, and care).
    - **Lost Professional Wages & Administrative Time:** Plaintiff lost countless hours coordinating communications, managing insurance bad-faith logistics, and attending medical specialists, resulting in substantial missed professional work. Plaintiff routinely earns **$90 per hour**, performing **7 to 10 massage sessions a week**, which were directly disrupted and lost due to medical travel and the physical fallout of Defendants' actions.

- ○

5. **Actual Property & Material Damages:**
   - Vehicle fair-market value (comparables) — $6,999
   - Aftermarket rims & tires (recent purchase; receipt) — $4,999
   - 24K gold pendant (~32g) + chain (~5–6g) (exact market value) — [Calculated per current market rate]
   - Louis Vuitton bag (purchase ≈ $1,400; FMV used) — $800
   - Nike utility backpack (used) — $50
   - Passport replacement — $130
   - Three Nike shorts (used) — $60
   - Two Nike Tech Fleece sweatsuits (used) — $170
   - Lebron XXI shoes (used) — $80
   - Nike VaporMax Plus (used) — $90
   - AirPods (2nd gen, used) — $120
   - “1 Million Lucky” cologne (partial) — $40
   - Direct impact on assessed residential property value — $7,000
   - **Subtotal Actual Property & Material Damages:** ~$28,000

6. **Total Financial Scope:** Due to severe physical injuries, permanent residential business disruption, environmental toxic dumping, lifetime medical monitoring requirements, and systematic corporate bad faith executed across a multi-year timeline, Plaintiff seeks actual, non-economic, punitive, and statutory enhanced damages (including trebling under IFCA and the CPA) against both Defendants,

jointly and severally, totaling **$1.2 Million** (or an amount to be proven precisely at trial).

## VI. PRAYER FOR RELIEF

Plaintiff respectfully requests judgment against Defendants, jointly and severally, as follows:

1. For actual, compensatory, and non-economic damages in an amount to be proven at trial (estimated at $1.2 Million total impact);
2. For lifetime medical monitoring damages to address unknown health complications arising from unmitigated residential biohazard off-gassing;
3. For enhanced statutory damages under RCW 48.30.015 and treble damages under RCW 19.86.090;
4. For court-ordered sanctions against defense counsel for misrepresenting Federal Rule 26 guidelines and attempting out-of-court discovery blockades;
5. For pre- and post-judgment interest at the maximum legal rate;
6. For any other relief this Court deems just, equitable, and proper

**Respectfully submitted this 14th day of September, 2026.**

***s/Amaruel Knowledge***
Amaruel Knowledge, Pro Se
716 South Proctor
Tacoma, WA 98405